Filed 2/2/26  Arbit v. Zuckerberg CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| STANISLAV ARBIT, | B340261 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 23TRCP00474) |
| v. | |
| MARK ZUCKERBERG, | |
| Defendant and Respondent. | |

APPEAL from a judgment and order of the Superior Court of Los Angeles County.  Douglas W. Stern, Judge.  Affirmed.

Stanislav Arbit, in pro. per., for Plaintiff and Appellant.

Orrick, Herrington & Sutcliffe, Eric A. Shumsky and Elizabeth A. Bixby for Defendant and Respondent.

_____

# INTRODUCTION

Plaintiff Stanislav Arbit, a former employee at Facebook, Inc., filed a complaint alleging defendant Mark Zuckerberg stalked and defamed him through a network of agents around Stanislav's home and work. The trial court sustained Zuckerberg's demurrer and denied Arbit leave to amend. We affirm the order because Arbit alleges fanciful theories with no basis in fact.

# FACTUAL BACKGROUND

## 1. The Complaint

On December 18, 2023, Arbit filed his complaint against Zuckerberg. Arbit alleges he was a former employee at Facebook, Inc. who Zuckerberg targeted because he was a former employee. Arbit further explains that "the defendant is a principal in a fifth-column network that conspires to target Americans, who do not have utility to them, to remove them from society by any available means, including murder." He elaborated that Zuckerberg agitates his targets for a year to frighten them. Then after a year, "they force the victim, or in this case, they forced me out of housing and employment." "The goal, and eventual result, is to have the victim's savings drained, all credit exhausted, and for the victim's resume to have a long gap in employment." In addition, "[d]efendant spies on the plaintiff and reflects gathered intelligence in his choreographed field performances and inauthentic interactions with Plaintiff." Arbit articulates two causes of action against Zuckerberg: (1) stalking under Civil Code section 1708.7, and (2) defamation under Civil Code sections 44 through 47.

## 2. Arbit's motion to disqualify the trial judge

On April 25, 2024, Arbit filed an ex parte application and motion to disqualify the trial court judge, claiming that the judge stated he did not care about Arbit's case and then intimidated Arbit by having an armed deputy stand by Arbit at a hearing. Arbit also alleges the armed deputy followed him to the elevator, and that the trial judge inappropriately denied his motions because he was biased toward the billionaire defendant, Zuckerberg. The same day it was filed, the trial court declined to consider the motion on an ex parte basis, and indicated it would follow the regular procedure under Code of Civil Procedure section 170.3, subdivision (c)(3). Thereafter, on May 1, 2024, the trial court struck the statement of disqualification, ruling the motion was based on "[p]laintiff's conclusions and speculation about the assigned judge and his motivations, based on bias and the appearance of bias, and based on conduct by individuals other than the assigned judge." The docket notes that a certificate of mailing of the court order was filed on May 2, 2024.

## 3. Zuckerberg's demurrer

On June 7, 2024, Zuckerberg filed a demurrer seeking an order sustaining his demurrer without leave to amend. Zuckerberg argued that the complaint's allegations were implausible and conclusory. Arbit did not file an opposition to the demurrer, and on July 25, 2024, Zuckerberg filed a reply brief, noting that Arbit failed to oppose his demurrer. On August 1, 2024, the trial judge presided over a hearing on Zuckerberg's demurrer. The trial court posted a tentative ruling for the demurrer prior to hearing argument. Arbit did not appear at the hearing while Zuckerberg submitted on the trial court's tentative ruling. The trial court adopted its tentative ruling and

3

sustained Zuckerberg's demurrer without leave to amend. The trial court ruled that Arbit's causes of action for stalking and defamation failed because Arbit's allegations were conclusory. For both causes of action, the trial court ruled "[p]laintiff has not shown how he can amend."

Arbit appealed on August 6, 2024.

## DISCUSSION

Arbit presents two issues on appeal. First, we find that Arbit cannot appeal the trial court's order striking his motion to disqualify the trial judge. Second, we find no error in the trial court denying him leave to amend.

### 1. Motions to disqualify trial judges are not appealable

Arbit moved to disqualify the trial judge prior to the trial court hearing Zuckerberg's demurrer. On appeal, Arbit contends that the trial judge should not have ruled on Zuckerberg's demurrer because the trial judge should have been disqualified prior to ruling on the demurrer. Relatedly, Arbit contends his motion was meritorious and argues the trial court erred in striking it. We, however, decline to reach the merits of this argument as a motion to disqualify a trial judge is not appealable. Code of Civil Procedure section 170.3, subdivision (d) provides, "The determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate from the appropriate court of appeal sought within 10 days of notice to the parties of the decision and only by the parties to the proceeding." (*People v. Panah* (2005) 35 Cal.4th 395, 444.) Our Supreme Court has further elaborated that "the statute means what it says: Code of Civil Procedure 170.3, subdivision (d) provides the exclusive

4

means for seeking review of a ruling on a challenge to a judge." (*Ibid*.)

Here, Arbit never sought writ review. The clerk provided notice on May 2, 2024, and Arbit did not file his appeal until August 6, 2024. Thus, we cannot reach the merits of Arbit's arguments as the order striking the disqualification motion is not appealable. (*People v. Panah*, *supra*, 35 Cal.4th at p. 444.) Moreover, the time to file a writ lapsed long before Arbit filed this appeal. (Code Civ. Proc., § 170.3, subd. (d).)

## 2. The trial court did not err in denying leave to amend

### 2.1 Legal standard

Generally, we independently review a trial court's rulings on demurrer. (*Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1100.) However, "when, as here, the only [] aspect of the court's ruling challenged on appeal is its denial of leave to amend, our review is limited to determining whether the court erred in denying the plaintiff an opportunity to cure the deficiency." (*Sierra Palms Homeowners Assn. v. Metro Gold Line Foothill Extension Construction Authority* (2018) 19 Cal.App.5th 1127, 1132 (*Sierra Palms*).) In this context, we review whether the trial court abused its discretion in denying amendment. (*Ibid*.) "Generally, sustaining a demurrer to a party's first complaint and refusing leave to amend is unwarranted if there is some probability that the complaint may be amended to state a cause of action." (*Agostini v. Strycula* (1965) 231 Cal.App.2d 804, 805.) " 'The plaintiff has the burden of proving that [an] amendment would cure the legal defect, and may [even] meet this burden [for the first time] on appeal.' " (*Sierra Palms*, at p. 1132.) Relatedly, per statute, a plaintiff can seek amendment on appeal even if the

5

plaintiff did not request amendment in the trial court. (Code Civ. Proc., § 472c, subd. (a).) In reviewing the underlying order, we affirm the judgment based on any grounds argued in the demurrer regardless of the basis of the trial court's order. (*Shaw v. Los Angeles Unified School District* (2023) 95 Cal.App.5th 740, 754.)

In addition, California " 'appellate courts possess the . . . inherent power to summarily dismiss any action or appeal which . . . is based upon . . . frivolous grounds.' " (*Huang v. Hanks* (2018) 23 Cal.App.5th 179, 182.) We have this authority because " 'California courts possess the inherent authority to dismiss cases that are fraudulent or "vexatious." ' " (*Ibid.*)

### 2.2 The trial court did not err in denying amendment

Arbit does not challenge the trial court's ruling on the demurrer, and instead more narrowly appeals the trial court's decision to deny amendment. Arbit argues, "If allowed to amend the complaint, [plaintiff] can cure the deficiencies in the original complaint by pleading facts not in the original complaint."

As an initial matter, we reject Zuckerberg's argument that Arbit waived amendment by failing to raise the issue in the trial court. As we already noted, a plaintiff can argue for leave to amend on appeal for the first time. (Code Civ. Proc., § 472c, subd. (a).) Thus, we address whether the trial court erred in denying leave to amend.

### 2.3 Arbit's stalking claim

Stalking requires the plaintiff to prove: (1) "[t]he defendant engaged in a pattern of conduct the intent of which was to follow, alarm, place under surveillance, or harass the plaintiff"; (2) "[t]he plaintiff reasonably feared for his or her safety, or the safety of

6

an immediate family member" or "the plaintiff suffered substantial emotional distress, and the pattern of conduct would cause a reasonable person to suffer substantial emotional distress"; (3) as part of the pattern of conduct, the defendant made a credible threat with the intent to place plaintiff "in reasonable fear for his or her safety, or the safety of an immediate family member"; and (4) the plaintiff must have "clearly and definitively demanded that the defendant cease and abate his or her pattern of conduct and the defendant persisted" unless "exigent circumstances" make the demand "impractical or unsafe." (Civ. Code, § 1708.7, subd. (a).)

Here, Arbit filed extensive factual allegations in both his opening and reply briefs to establish how he would amend his complaint if given an opportunity. First, we note it is generally an abuse of discretion for a trial court to deny a plaintiff at least one opportunity to amend a complaint. (*Agostini v. Strycula*, *supra*, 231 Cal.App.2d at p. 805.) Here, however, the trial court correctly sustained the demurrer because the fanciful allegations here cannot support causes of action. (*Huang v. Hanks*, *supra*, 23 Cal.App.5th at p. 182.)

For example, Arbit alleges "defendant is a principal in a fifth-column network that conspires to target Americans . . . to remove them from society by any available means, including murder." However, these allegations describe " ' "fantastic or delusional [or fanciful] scenarios" ' " and cannot form the basis of viable claims. (*Huang v. Hanks*, *supra*, 23 Cal.App.5th at p. 182.) In his opening brief, Arbit offers additional facts to support amendment including that "inauthentic behavior is constant, often involving poorly acted out skits designed to manipulate, foreshadow or suggest future threats; some are distractions; some

7

are biological attacks with sick people purposely targeting Appellant-Plaintiff with viral loads, including trespassing into private spaces . . . ." Arbit in his reply brief offers additional details such as Zuckerberg's agents began frequenting his neighborhood in San Francisco, with one disguised as a homeless drug dealer. However, Arbit's further fantastic scenarios share the same flaw as his initial ones, and Arbit has not carried his burden of showing he can cure the legal defect by alleging a claim with an arguable basis. (*Ibid*.)

### 2.4    Arbit's defamation claim

Arbit also seeks to amend his defamation cause of action against Zuckerberg. Defamation requires " ' "(1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage." ' " (*Jackson v. Mayweather* (2017) 10 Cal.App.5th 1240, 1259.) In his complaint, Arbit alleges "Defendant, Mark Elliott Zuckerberg, is a principal in a conspiracy to defame the plaintiff, Stanislav Arbit. [¶] The defamation was planned and executed with Defendant's vast network."

Here, as above, Arbit's theory is that Zuckerberg controls a vast network of people who harass Arbit. Most of Arbit's factual allegations are more closely associated with a stalking theory than a defamation claim. Regardless, as we discussed above, these fanciful allegations do not support further amendment as they are without merit. (*Huang v. Hanks*, *supra*, 23 Cal.App.5th at p. 182.)

### 2.5    Arbit proposes an amended complaint beyond the record and additional theories

Arbit has proposed an amended complaint that he has uploaded to a private website that is not properly before us. It is

not anywhere in the record, and we will not go beyond the record here. "Appellate review is generally limited to matters contained in the record." (*Lona v. Citibank, N.A.* (2011) 202 Cal.App.4th 89, 102.) Regardless, as we indicated above, the record is sufficient for us to evaluate Arbit's proposed amendments, and any amendments here would not address the fanciful nature of his theories.

Arbit also seeks leave to amend to add additional causes of action. Arbit seeks to amend his complaint to allege: (1) cause of action under the Racketeer Influenced and Corrupt Organizations Act (RICO) under 18 U.S.C. § 1962; (2) a cause of action for aiding and abetting under RICO; (3) a cause of action because the Threads app restrains trade in violation of California's Cartwright Act and the federal Sherman Antitrust Act; (4) a cause of action because the Threads app aids and abets in restraining trade in violation of California's Cartwright Act and the federal Sherman Antitrust Act; (5) a cause of action for conspiracy to stalk; and (6) a cause of action for aiding and abetting stalking. However, these additional causes of action suffer from the same defect as his initial theories, as they are fanciful theories with no legal or factual basis. (*Huang v. Hanks*, *supra*, 23 Cal.App.5th at p. 182.)

## DISPOSITION

The judgment and order are affirmed.  The parties shall bear their own costs on appeal.

VIRAMONTES, J.

WE CONCUR:

STRATTON, P. J.

SCHERB, J.